(May 11, 1979)

Westchester County Civil Service Employees Association, Inc., et

al., Respondents, v ALFRED B. DEL BELLO et al., Appellants. In the Matter of THOMAS SPASIANO et al., Respondents, v ALBERT T. HAYDUK et al., Appellants. THOMAS SPASIANO et al., Respondents, v ALFRED B. DEL BELLO et al., Appellants.—Appeals from three judgments of the Supreme Court, Westchester County (one in each action and in the proceeding), all dated February 21, 1979, which, *inter alia,* declared No. 11 (Intro. 11-1978) of the Local Laws of 1978 of the County of Westchester to be invalid and granted the petition in the CPLR article 78 proceeding. Judgments affirmed, without costs or disbursements, on the opinion of Mr. Justice Beisheim at Special Term. Mollen, P. J., Hopkins and Mangano, JJ., concur.

O'Connor, J., dissents and votes to reverse the judgments, dismiss the CPLR article 78 proceeding and, in the declaratory judgment actions, direct judgment in favor of defendants declaring that Local Law No. 11 (Intro. 11-1978) of the Local Laws of 1978 of the County of Westchester is valid and may go into effect on July 1, 1979, with an opinion, in which Suozzi, J., concurs. O'Connor, J. (dissenting). Local Law No. 11 (Intro. 11-1978) of the Local Laws of 1978 of the County of Westchester adopted pursuant to section 1 of article IX of the New York State Constitution, has the stated purpose of creating a new Department of Public Safety Services for Westchester County. This new entity, created by merging the functions of the Westchester County Sheriff and Parkway Police, establishing the appointive position of Commissioner/Sheriff to head the department, and delineating additional powers of the department, was established when Local Law No. 11 (Intro. 11-1978) was enacted by the County Board of Legislators on July 20, 1978, validated by the County Executive on July 28, 1978, and, in the form of a referendum, was submitted to and approved by the electorate in the November, 1978 general election. This challenged legislation is consistent with all governing statutory and case law requirements, and appellants are entitled to a declaration that Local Law No. 11 (Intro. 11-1978) is constitutional and may go into effect on July 1, 1979. I therefore respectfully dissent. Although numerous points have been raised challenging the constitutionality of Local Law No. 11 (Intro. 11-1978), only one merits extensive discussion. Pursuant to section 13 of article XIII of the New York State Constitution, Sheriffs are elected for a three-year term of office. If Local Law No. 11 (Intro. 11-1978) had not been adopted, the term of office of the present Sheriff would have expired on December 31, 1979. The primary contention of the plaintiffs and petitioners (hereinafter respondents), which was accepted by Special Term, is that this constitutional term of office may not be truncated by abolishing the office prior to its natural expiration date. Granting validity to this argument, however, is contrary to unambiguous statutory law, case law and simple good sense in the administration of county government, and would do violence to the avowed goals and aspirations of article IX of the New York State Constitution granting home rule to local governments. Section 1 of article IX, entitled "Bill of rights for local governments", provides, in part: "(h) (1) Counties * * * shall be empowered by general law * * * to adopt, amend or repeal alternative forms of county government provided by the legislature or to prepare, adopt, amend or repeal alternative forms of their own. Any such form of government or any amendment thereof * * * may transfer one or more functions or duties of the county * * * or may abolish one or more offices, departments, agencies or units of government". No language of limitation is to be found in this extensive grant of power, and analysis of the legislative history of article IX gives every indication that none was intended. Article IX is derived in large part from the Fearon Amendment of 1935, which altered section 26 of

article III of the Constitution of 1894. In its extended discussion and analysis of problems relating to home rule and local government, the New York State Constitutional Convention Committee noted (Problems Relating to Home Rule and Local Government, New York State Constitutional Convention Committee, 1938, Book XI, pp 10-11): "COUNTY HOME RULE The conception of home rule for counties is a relatively new one. Even more than cities, the counties have been by tradition closely connected with the State. They have been, in a sense, the direct regional agents of the State government. Hence, the idea of county home rule was somewhat anomalous, for by very definition counties were from one viewpoint useful only in so far as they did not possess home rule. But, it has recently been urged by the advocates of county home rule, this relationship between the county and the State has of late become more and more theoretical, less and less related to the realities of local· development. Because they were considered integral parts of State government, many details relating to the structure of county government were written into the Constitution. Before the adoption of the County Home Rule Amendment it was beyond the province of the county to alter the size and powers of the board of supervisors, as this was specifically delegated by the Constitution to the Legislature. *The Constitution* also *required particular elective officers in counties,* and the powers of these officers were beyond the reach of either the Legislature or the local electorate. Constitutions are relatively inflexible instruments. *This freezing of organization* into basic law *was found* to become *more and more inappropriate* as the population of counties grew, and as their problems consequently increased. Moreover, *new conceptions of efficient governmental practice arose which were not taken into consideration by the constitutional provisions on local government,* most of which dated from the very earliest Constitutions themselves. \* \* \* *The County Home Rule Amendment attempted to remedy these faults by taking* the *details of county organization out of the Constitution and putting them into the hands of the State Legislature and the voters of the county."* (Emphasis added.) The committee further noted (pp 122-123); "Prior to the adoption of the County Home Rule Amendment in 1935, the county board of supervisors, county clerk, district attorney, sheriff, register, if any, county judge, and surrogate—subject to the proviso that the duties of the last two officers might be discharged by the same person—were constitutionally protected officers. \* \* \* Since the adoption of the County Home Rule Amendment, a board of supervisors is no longer required in a county, but the Legislature is required to provide such form of elective legislative body as it may choose. In addition, the new form of government for a county which the legislature is required to provide, and which any county may adopt by majority vote as prescribed, may not only provide for the appointment or election of *any county officers,* but *may entirely abolish their offices.* As previously indicated, transfer of functions to or from the county is also authorized, and the abolition of offices all of whose functions have been transferred, without regard to 'any other provisions of this Constitution inconsistent herewith.' Thus, protections surrounding constitutional offices no longer operate with regard to a form of government adopted under the County Home Rule Amendment. In a county proceeding under the amendment, therefore, *the police functions of a sheriff,* which form a substantial portion of the duties of this constitutional officer, *could be transferred* to the State police; *or the office could be made appointive, or abolished entirely; or any other desired change* in connection with any existing constitutional office could be effected." (Emphasis added.) The foregoing serves as an important backdrop in establishing a context of

analysis in this proceeding, for it makes it abundantly clear that in seeking to create new conceptions of efficient governments responsive to the needs and desires of the electorate, the transfer of power to local governments was discussed in broad and expansive terms with emphasis being placed on allowing them all of the leeway necessary to achieve these laudable goals. When such a clear legislative expression of intent has been established, the courts should be quite circumspect in determining that a law adopted with a view towards furthering the legislative will is unconstitutional. As was stated in *Marcus Assoc. v Town of Huntington* (45 NY2d 501, 505): "That a legislative enactment will be presumed constitutional is an elementary but significant principle of law. The strength of this presumption, sometimes underestimated, has been repeatedly underscored by the courts of this State (see, e.g., *Wiggins v Town of Somers,* 4 NY2d 215, 218; 1 Anderson, New York Zoning Law and Practice, § 2.11, p 54). In this vein, we recently stated: 'The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality' *(Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11). It is against this backdrop that the ordinance must be evaluated." At the outset it is pivotal to note that Local Law No. 11 (Intro. 11-1978) encompasses a bona fide abolition of the office of the Westchester County Sheriff and of the Parkway Police, and their replacement with a new Department of Public Health Safety Services. Westchester County, faced with the troubling situation of having two distinct law enforcement departments ofttimes providing duplicative services and also giving rise to undesirable jurisdictional problems, undertook the intricate process of merging the two into a completely new creature, fundamentally unique and independent from its predecessors. The new Department of Public Safety Services was established with the anticipation that a $125,000 budgetary savings would be realized during 1979. With approximately 300 employees involved in this restructuring of the law enforcement authorities of Westchester County, the State Division of Criminal Justice Services committed itself to assisting the county in obtaining a grant from the Law Enforcement Assistance Administration to pay for needed consultant services valued at approximately $50,000. Plans have been made and efforts expended towards working out the myriad difficulties arising from the establishment of this new department, i.e., preparing new operating manuals, integrating records, developing organizational charts, locating and renovating physical premises to house the new department, and other matters too numerous to mention. Local Law No. 11 (Intro. 11-1978), in its detailed formulations, establishes and assigns divisions of responsibility within a single, uniform department. In light of the foregoing, and in the total absence of any evidence indicating any lack of *bona fides* in the abolition of the office of Sheriff, any analysis of the legal issues raised must be founded on the basic proposition that the new law involves a proper, practical and sensible abolition of the elected office of Sheriff and of the Parkway Police and their replacement with a new Department of Public Safety Services, to be headed by an appointed official. Within this context, the argument that the office of Sheriff cannot be abolished during the term of office of the incumbent fails to maintain vitality when subjected to close scrutiny. Statutory law certainly contains no such restriction. Article IX (section 1, subd [h], par [1]) of the State Constitution provides the authority for any county to abolish the county office of Sheriff and article XIII (section

13, subd [a]), which establishes a three-year term of office for the Sheriff, does so "except as authorized in section one of article nine of this constitution". This explicit recognition of the broad powers provided for by local home rule, when read in the context of the legislative history of article IX, certainly offers no indication that a Sheriff's term may not be shortened when his office is abolished and replaced in a bona fide manner. In fact, the acknowledgement of the powers of local government contained in the article establishing terms of office for law enforcement officers points to a legislative recognition that the powers of a local government can affect an otherwise constitutionally mandated term of office. The case law further supports the constitutionality of eliminating the office of Sheriff prior to the expiration of a three-year term. In *Matter of Enders v Rossi* (45 AD2d 447, affd 34 NY2d 966), it was held that the Oneida County Charter was unconstitutional insofar as it established a four-year term of office for Sheriff because it was in direct conflict with the establishment of a three-year term of office in article XIII. Article IX was not authority for merely changing the term of office without any other change. The court, in discussing article IX, noted, however *(supra,* p 449): "This exception clause * * * was designed only to free from the constitutional mandate regarding terms of office *those local governments which had abolished or transferred the functions of such county offices to other departments."* (Emphasis added.) The good faith transfer of the duties of the office of Sheriff here to the Department of Public Safety Services fits directly within this language, and thus served as a legitimate basis for shortening the present incumbent's term to two and one-half years. In *Burke v Kern* (287 NY 203), the New York City Charter was amended by abolishing, *inter alia,* the offices of Sheriff in each county and replacing them with a single, appointive office of city Sheriff. The duties of the new office were essentially similar to those of the abolished offices. In ruling that the amendment was constitutionally authorized by article IX and rejecting a claim that those who had been elected in the event the amendment did not pass should be permitted to serve their terms of office, the court stated *(supra,* pp 218-219): "Article IX, section 8, of the Constitution authorized the city of New York to abolish these offices. Moreover, this constitutional provision *expressly designates* those incumbents who may serve out their terms despite the action of the city under the provisions of this amendment, namely, the elective county officers who were in office at the time that article took effect * * * Accordingly, the provisions * * * meant that the county officers who were in office on January 1, 1939, were permitted to fill out their then terms. *Otherwise, this section vested the city with unconditioned power to abolish these county offices* * * * The Legislature has power to determine its own policy with reference to a public office or a public officer. Exercising that right *it may shorten or lengthen the term of the office or abolish it altogether, subject only to the restrictions, if any, contained in the State Constitution."* (Emphasis added.) Two observations may be gleaned from the foregoing language. First, the Court of Appeals, in discussing the power to abolish an office under article IX, noted that a term of office may be shortened, subject only to restrictions contained in the Constitution. As already discussed, no restrictive language limiting the right to abolish the office of Sheriff during an incumbent's term of office is to be found in the Constitution. Second, and more importantly, the Court of Appeals indicated that when an office is abolished, an incumbent may serve out his term only when an express authorization for such continued service is found in the legislation authorizing the abolition of the office. The clear implication is that absent such

express authorization the incumbent loses his status when the office disappears. If an official, once elected, had a vested right to serve out his term of office, it would have been unnecessary for the court to note the specific legislative authorization for those county officers in office January 1, 1939 to serve out their terms. In our case, nothing exists to indicate any vested right of the Sheriff to serve out his term of office. *People ex rel. Eldred v Palmer* (154 NY 133), relied upon by Special Term, is not to the contrary. In *Eldred* a District Attorney was elected without there existing a predetermined term of office and the court held that the Legislature could not subsequently define the term of office. The court stated *(supra,* p 139): "It would be contrary to all precedent that the electors should not be advised before casting their votes of the duration of the term of the officers to be elected. The power attempted to be exercised by the legislature in·this case, if sustained, would open the door to obvious abuses. It would practically confer upon the legislature the power to prescribe a short or long term, and to shorten or lengthen the official life of an officer, who by the Constitution is to be elected by the people, upon considerations wholly foreign to their true interests." The compelling logic of this reasoning is unassailable, but it has nothing to do with this case. As already discussed, nothing in the record indicates that the restructuring of the county police enforcement establishment arose out of a desire to manipulate terms of office or out of anything other than a good faith attempt to make this important area of service to county residents more efficient and effective. In *Koch v Mayor* (152 NY 72), a case involving the question of whether the statutory office of Police Justice could be abolished during the term of office of an incumbent, the court made several astute and insightful observations which have full application to this case *(supra,* pp 75, 81-82): "The legislature has all the power of legislation that the People of the state can grant, except as it is restrained, expressly or impliedly, from the exercise of particular powers by the Constitution. (Art. III, § 1; *Bank of Chenango v. Brown,* 26 N.Y. 467; *People ex rel. McLean v. Flagg,* 46 N.Y. 401.) Since power to legislate is the rule, and restraint upon that power the exception, as was said by this court in an important case, 'in inquiring whether a given statute is unconstitutional, it is for those who question its validity to show that it is forbidden.' *(People ex rel. Wood v. Draper,* 15 N.Y. 532, 543.) Subject only to the restrictions of the Constitution, the legislature may do what it thinks best with a public office or a public officer, by abolishing the office, shortening or lengthening the term thereof, increasing or diminishing the salary and the like. *(Nichols v. MacLean,* 101 N.Y. 526, 533.) We need not look, therefore, at the grant of power, but simply at the restraints upon the grant, in order to determine whether legislation is constitutional. * * * Is it reasonable to hold that an officer can continue when the office itself is abolished or that an office can be abolished for every purpose except the personal advantage of the officer? * * * Inasmuch as the Constitution does not attempt to regulate permanently the terms of these officers, the fair inference is that the term expires with the office when that is abolished by the legislature. The destruction of the office naturally involves the official death of the officer. A construction making it impossible for the term of statutory officers to end otherwise than by lapse of time, when it might result in serious inconvenience and disorder, does not seem reasonable. Necessarily a term may expire otherwise than by lapse of its full period, as by the non-residence or insanity of the incumbent, for instance. Probably no one would contend for such a literal construction as would continue in office a non-resident or an insane person, yet the result of holding that the legislature can abolish the office but cannot dislodge the

incumbent is, as I view it, equally narrow and unsafe." The foregoing sets forth principles of construction and good government that are compelling when applied to our case. As the power of local government to regulate and construct its own structure under article IX is broad, specific restrictions must be sought before we deny Westchester County the right to abolish the office of Sheriff. The Constitution does not attempt to permanently regulate the term of office of a Sheriff because article XIII, by its own terms, is made subject to article IX. An office is not created for the officer but, rather, the officer gains his very being from the existence of the office. Can it be seriously contended that basic county governmental reconstruction deemed necessary by the County Legislature and County Executive must await the expiration of the incumbent's term? I think not, unless we are prepared to adopt a government which stresses the good of the individual over the good of the people. Finally, in *Matter of Gertum v Board of Supervisors of County of Kings* (109 NY 170), the Town of New Lots was merged into and became a part of the City of Brooklyn. The statute establishing this merger specified that Justices of the Peace acting at the time the legislation took effect were to continue in office until the term they were elected for expired. The law became effective August 1, 1886. In rejecting a claim by a New Lots Justice of the Peace elected in April, 1886, who was to begin serving his term of office in January, 1887, that he was entitled to serve his term, the court stated *(supra,* pp 172-173): "It seems unreasonable to suppose that the framers of the Constitution intended by its provision, relating to the terms and elections of justices of the peace in towns, to thwart the exercise of this beneficial power, and compel the continued retention of a town organization for the mere purpose of furnishing a place for a superseded and unnecessary officer. Such officers are the incidents only of the political existence of towns. They are provided and created for the town, and it is quite absurd to say that they continue in office after the town has ceased to exist. While the Constitution provides that towns shall elect justices of the peace whose terms shall continue for four years, there is nothing in this provision that requires the indefinite preservation and perpetuation of town organizations, to enable such officers to serve out their terms, or forbids a change of local government, if, in the judgment of the legislature, the welfare and prosperity of the community requires it." Pursuant to article IX, Westchester County was free to abolish the office of Sheriff at any time during the term of office of the incumbent, provided such action was taken in good faith and involved a bona fide governmental restructuring. For this reason, the alleged infirmity found by Special Term does not exist and Local Law No. 11 (Intro. 11-1978) should be found to be constitutional. All of the foregoing is directly contrary to the position this court took in *Matter of Cantrell v Hayduk* (65 AD2d 609, revd 45 NY2d 925). But there, as indicated by the Court of Appeals, the primary issue presented was the timeliness of the commencement of the lawsuit. Indeed, it was upon a specific finding of laches that the Court of Appeals ultimately sustained the appellants. The pervasive and complex issue of constitutionality was neither properly briefed nor fully presented by the parties nor, I am now convinced, under the exigencies of time, was it properly decided by this court. Because of the deep implications and lasting effects of the legislation involved, I do not hesitate to reverse my position. Furthermore, even assuming that a constitutional infirmity exists in abolishing the office of Sheriff as of July 1, 1979, there is no reason to strike down Local Law No. 11 (Intro. 11-1978) and force Westchester County to once again go through the tedious and difficult task of adopting legislation aimed at resolving the difficulties previously dis-

cussed which must be cured if the people of Westchester County are to receive the efficacious police enforcement service they have a right to expect. Rather, an appropriate remedy would be to enjoin the implementation of Local Law No. 11 (Intro. 11-1978) until January 1, 1980. Such a remedy would be consistent with observing the will of the people, who approved the legislation in question by an overwhelming margin in a referendum, while at the same time upholding the legal principle at issue. Respondents have raised numerous other legal challenges to Local Law No. 11 (Intro. 11-1978) and I am in full accord with Special Term insofar as those contentions were found to be without merit. I will only briefly address myself to those arguments accepted by Special Term as valid and requiring a declaration of unconstitutionality because I find they have little merit, especially in light of the strong presumption of constitutionality which attaches to Local Law No. 11 (Intro. 11-1978). Invalidity cannot be based upon a finding that the additional duties of Commissioner/Sheriff of the Department of Public Safety Services have been improperly added to the duties of Sheriff in violation of article XIII (section 13, subd [a]) of the New York State Constitution. As already noted, the office of Sheriff no longer exists in Westchester County. Contrary to Special Term's finding, all provisions presently a part of Local Law No. 11 (Intro 11-1978), including the effective date of the legislation and the manner for selecting a police advisory board, were matters that speakers at the public hearing of July 17, 1978 could address themselves to even though such provisions were then a part of No. 12 of the Local Laws of 1978 of the County of Westchester. It is also clear that Local Law No. 11 (Intro. 11-1978) in its present form was properly passed by the Board of Legislators on July 20, 1978. Challenges concerning the reclassification of employees are premature and must await the assignment of job titles to any affected employee. The arguments urged at this time involve unwarranted speculation. The law is not violative of sections 83 and 83-a of the Civil Service Law which are, by their very clear terms, inapplicable to the merger involved in this case. Finally, the protections afforded by section 75 of the Civil Service Law have not been abridged in any manner by Local Law No. 11 (Intro. 11-1978). Accordingly, I respectfully dissent. Suozzi, J., concurs in the dissenting opinion of Mr. Justice O'Connor.