Hon. Thomas R. Sullivan District Attorney, Richmond County
Hon. Robert Morgenthau District Attorney, New York County
Attorney General Robert Abrams has asked me to respond to your letter of October 30, 1979, and to the memorandum supplied earlier to Assistant Attorney General William Dowling raising the question of whether district attorneys are "state officers" within the meaning of section 7 of Article XIII of the Constitution, which prohibits increases or decreases in compensation during the term for which state officers are elected. The reference in that section is to "state officers named in this constitution". The only basis for considering district attorneys to be "state officers" so named is section 13 of Article XIII, which deals with four "county" officers — district attorneys, sheriffs, county clerks, and registers. Over the past century an anomalous situation has developed: people generally and the Legislature in particular have considered them to be "county" officers but courts and others, including this office, when called upon to interpret Article XIII, have continued to consider them to be "state" officers.
Up to now, acceptance of this anomaly has been the way that the changing nature and realities of county government were reconciled with the constitutional structure of county government. Counties were originally administrative units created primarily to carry out state functions. Some "county" officers, particularly those with constitutional status, were concerned with carrying out state functions as well as county functions. Through most of the 19th Century, the accepted concept was that certain county officers named in the Constitution, including district attorneys, were also state officers. Opinions and judicial decisions of the 20th Century that accepted this concept were based on the assumption that the underlying constitutional theory of county government was unchanged.
In this century, however, the concept of home rule has altered the traditional relationship between state and local governments. Constitutional grants of home rule power can in effect transfer from the state to local governments some of the attributes of sovereignty. This has occurred in New York, starting early in the century with cities, later cautiously extended to counties, and recently extended broadly to counties, cities, towns and villages.
Until 1958, however, the cautious extension of home rule power to counties in no way appeared to undercut the fundamental "state agent" concept of county government. In November of that year, the voters approved an amendment directing the Legislature to grant to counties substantially plenary power to draft their own charters. This alone would not have disturbed the "state agent" concept because the home rule power grant by itself would not have covered the four officers specified in the predecessor of what is now section 13 of Article XIII. However, the 1958 amendment also amended that section by providing that the requirement for the election of the four named officers for three-year terms was subject to the new home rule provision. That provision allowed the voters to adopt a county charter that could provide for appointment instead of election of any county officer and for the abolition of any office upon the transfer of its functions elsewhere. In 1963 the voters adopted a broader home rule article that preserved the power to abolish county offices and continued the exception — "except as authorized in section one of article nine of this constitution" — now in section 13 of Article XIII.
The significance of this change went unnoticed until 1979 when the Court of Appeals handed down Westchester County Civil Service Employees Assn. vDel Bello, 47 N.Y.2d 886 (1979), in which it reversed the Appellate Division, Second Department, on the basis of Justice O'Connor's dissent in that Court (70 A.D.2d 604 [1979]). The result in that case is a clear holding that a county acting under its constitutional home rule powers granted by section one of Article IX may abolish the office of sheriff prior to the expiration of the sheriff's term and may transfer his functions to a newly created appointive office.
The home rule power upheld in the Del Bello case is conceptually incompatible with a theory that the officers named in section 13 of Article XIII are state officers. Home rule is a power granted to a political subdivision to run its own affairs. Home rule is not a grant of power to a political subdivision to decide who are to be state officers. This is to say that the authorization to abolish an office held by an officer named in section 13 was a decision by the people to make the officers purely county officers; it was not a decision to allow a county to abolish a "state" office. Thus Del Bello represents a recognition of the reality of contemporary county government. Counties may structure their government as they wish and in doing so may determine who carries out duties imposed by the State. Moreover, even in counties that do not exercise their home rule power, the officers named in section 13 of Article XIII have ceased to be "state" officers.
This opinion is limited to the question of whether the officers named in section 13 of Article XIII are "state officers" prohibited by section 7 of that article from receiving a salary increase — or decrease — during their term of office. They are not "state officers". This opinion, therefore, supersedes contrary informal opinions rendered after 1958.
Any further questions concerning the relationship between this new interpretation of section 7 of Article XIII and the several legislative acts mandating the amount of compensation to be paid to full-time district attorneys should be referred to county attorneys. (In the case of the City of New York, questions should be referred to the Corporation Counsel.)