OPINION OF THE COURT
William E. Underwood, Jr., J.
This case is one of first impression.
*671 The central issue to this lawsuit is whether or not the Governor or the Suffolk County Executive with the approval of the County Legislature has the authority to appoint a person to fill the vacancy in the Office of the Suffolk County Clerk. Specifically, does County Law § 400 (7) give the Governor the authority or does Suffolk County Charter § C18-3 give the County Executive and the County Legislature the authority. A corollary issue is whether the person elected on November 7, 1989 serves for the unexpired term, that is, until December 31,1990, or for a full four-year term.
BACKGROUND
The facts are not in dispute and they are reiterated as they are necessary to this determination.
In November 1986, Juliette Kinsella was duly elected Suffolk County Clerk for a four-year term commencing on January 1, 1987, and concluding on December 31,1990.
On May 4, 1989, she died, thereby creating a vacancy in the Office of the Suffolk County Clerk. Thereafter, the Chief Deputy Suffolk County Clerk sent a letter dated May 9, 1989, to the Commissioners of the Board of Elections notifying them, pursuant to Election Law § 4-106 (4), that a "vacancy exists in the Office of the Suffolk County Clerk”. He also stated that "the vacancy shall be filled for the unexpired term, at the first general election at which the vacancy may be filled”.
On May 23, 1989, defendant, Mario M. Cuomo, appointed codefendant, William G. Holst, "County Clerk of Suffolk County, for a term commencing immediately and expiring on December thirty-first, nineteen hundred eighty-nine, to fill the vacancy created by the death of Juliette Kinsella”. The appointment was made "in accordance with Section 400 of the County Law”. Defendant Holst took the oath of office on May 24, 1989.
After assuming the Office of Suffolk County Clerk, Holst terminated the employment of the Chief Deputy Clerk and he asked for the resignation of nine other employees of the office. Plaintiffs, nine members of the Suffolk County Legislature, brought an order to show cause for a preliminary injunction restraining Holst from performing the functions and exercising the powers and duties of the Office of the Clerk of the County of Suffolk pending the determination of this action.
This court held a hearing and granted that branch of *672 plaintiffs’ motion which was for a preliminary injunction barring Holst from terminating the employment of three named employees. Defendants appealed the order and recently the Appellate Division, Second Department, affirmed (Blass v Cuomo, 154 AD2d 416). The Appellate Division’s affirmance of the preliminary injunction does not automatically establish that plaintiffs’ lawsuit has merit. Recently, in Moody v Filipowski (146 AD2d 675, 678), the Appellate Division commented, " ' "it is not for this court to determine finally the merits of an action upon a motion for preliminary injunction; rather, the purpose of the interlocutory relief is to preserve the status quo until a decision is reached on the merits * * Further, on an appeal from the granting of a preliminary injunction, we should not interfere with the exercise of discretion by Special Term and will review only to determine whether that discretion has been abused’ ” (emphasis in original). Therefore, this court will decide the merits of the lawsuit without being influenced by the Appellate Division’s affirmance of the preliminary injunction.
Plaintiffs also sought a declaratory judgment action (CPLR 3001) declaring that (1) the authority to fill a vacancy in the Office of the County Clerk of Suffolk County is vested in the Suffolk County Executive and the Suffolk County Legislature (Suffolk County Charter § C18-3); (2) the Governor does not have the authority to fill a vacancy in the said office; (3) the Governor’s appointment of William Holst is illegal, null and void; and (4) the person who is elected at the general election on November 7, 1989 shall serve for the unexpired term of Juliette Kinsella (Suffolk County Charter § C18-3 [A]).
I
THE PRINCIPAL LAWS THAT THE PARTIES RELY UPON
A
Plaintiffs rely on Suffolk County Charter § C18-3 (Local Laws, 1985, No. 12-1985), which states as follows:
"A. If the office of the County Clerk becomes vacant other than by expiration of term, the vacancy shall be filled for the unexpired term at the first general election at which the vacancy may be filled.
"B. Until the vacancy is filled by election as hereinafter provided, the vacancy shall be filled by appointment of a qualified person by the County Executive with the approval of the County Legislature”.
*673 Plaintiffs also rely on County Law § 2 (b) which provides that: "The provisions of this chapter in so far as they are in conflict with or in limitation of a provision of any alternative form of county government theretofore or hereafter adopted by a county pursuant to section two of article nine of the constitution, or any administrative code, county government law or civü divisions act enacted by the legislature and applicable to such county as now in force or hereafter amended, or in conflict with any local law hertofore or hereafter adopted by a county under an optional or alternative form of county government, shall not be applicable to the county, unless a contrary intent is expressly stated in this chapter.”
B
Defendants rely on the County Law. County Law § 400 (1) states that there shall be elected a Sheriff, County Clerk, District Attorney, and County Treasurer for a term of four years (L 1985, ch 658, eff July 28, 1985 [the term of Office of the County Clerk was changed from three years to four years after 1985 — Juliette Kinsella, having been elected in November 1986, had a four-year term]).
Subdivision (7) states, in relevant part, that "a vacancy in an elective county office, shall be filled by the governor by appointment * * * [s]uch officer shall hold office until and including the thirty-first day of December succeeding the first annual election at which the vacancy can be filled by election.”
II
An analysis of the Office of the County Clerk and who can fill a vacancy in the office must start with the New York Constitution. The Constitution provides that, "the clerk of each county shall be chosen by the electors once in every three or four years as the legislature shall direct” (NY Const, art XIII, § 13 [a]). The Legislature directed in County Law § 400 (1) that, "[t]here shall be elected a * * * county clerk * * * and * * * the term * * * of office * * * shall be four years” (L 1985, ch 658, § 1) "and shall apply to all terms of office commencing on and after January first, nineteen hundred eighty-six” (L 1985, ch 659, § 2).
The County Clerk must take and file an official oath of office (County Law § 402) and execute an official undertaking (County Law § 403). The Board of Supervisors, now the Suffolk *674 County Legislature (see, County Law § 150-a [2]; § 278), fixes the salary of the clerk which, of course, is in lieu of all fees, percentages, emoluments, or other compensation for services rendered (County Law § 201).
County Law §§ 525-533 specify in detail the various powers and duties of the County Clerk. For instance, the County Clerk is the Clerk of the Supreme and County Courts within the county (County Law § 525 [1]). And, as such, the County Clerk is deemed a State officer when he performs acts that are in themselves part of the functioning of the State judicial system (Olmsted v Meahl, 219 NY 270, 275).
However, when the County Clerk is not actually engaged as a clerk of the court, he is a county officer and not a State officer.
"The county clerk has traditionally been viewed as an officer performing dual roles. On one hand, while performing his duties as clerk of the Supreme Court or County Court, the clerk is a State judicial officer * * *. By contrast, in the performance of his general duties he is, although a constitutional officer (NY Const, Art XIII, § 13 [a]), a local officer” (Ashland Equities Co. v Clerk of N. Y. County, 110 AD2d 60, 61; see also, Durante v Evans, 94 AD2d 141; 25 NY Jur 2d, Counties, etc., § 312; 28 NY Jur 2d, Courts and Judges, § 132; Judiciary Law § 39; 1986 Opns Atty Gen 77).
Another court utilized this language, "[t]he county clerk in all his administrative duties is a local officer elected by the electors of the county and paid by taxes collected from the people included in the territory comprising the county. It is only when he performs state functions that he is to be treated as a state officer” (People ex rel. Plancon v Prendergast, 219 NY 252, 258).
The County Clerk shall perform the duties prescribed by law as register and such additional and related duties as may be prescribed by law and directed by the "board of supervisors” (County Law § 525 [1]). He shall provide at the expense of the county all books, files and other necessary equipment for the filing, recording and depositing of documents, maps, papers in actions and special proceedings of both civil and criminal nature, judgment and lien dockets and books for the indexing of the same as directed or authorized by law (County Law § 525 [2]). The County Clerk shall also keep a book to be known as a court and trust fund register (County Law § 530).
The. County Clerk shall appoint a Deputy County Clerk who *675 shall perform such duties as may be assigned by the County Clerk and during the temporary absence or inability of the County Clerk, the deputy shall have and exercise all of the powers and duties of the office. Further, in case of a vacancy in the Office of County Clerk, the Deputy County Clerk shall perform the duties of the County Clerk until a successor is elected or appointed and has qualified (County Law § 526 [1]).
Ill
Defendants have answered the verified complaint and have moved for summary judgment in their favor dismissing the complaint (CPLR 3212) and plaintiffs cross-move for summary judgment.
A
Defendants contend that the previously mentioned County Law § 400 (7) gives the Governor the authority to fill a vacancy in the Office of the Suffolk County Clerk. Defendants also rely on the cases of Carey v Oswego County Legislature (91 AD2d 62, affd 59 NY2d 847 [Governor can fill the vacancy in the Office of District Attorney]) and Cuomo v Chemung County Legislature (122 Misc 2d 42 [Governor can fill the vacancy in the Office of Sheriff]). Defendants argue that the filling of a vacancy in the Office of the Suffolk County Clerk is a matter of "State-wide concern” and that the provision of the Suffolk County Charter (§ C18-3) is superseded by County Law § 400 (7).
B
Plaintiffs on the other hand contend that County Law § 2 (b) divests the Governor of this authority to fill a vacancy in the said office because Suffolk County adopted, by charter, a method of filling that vacancy. Plaintiffs rely on the cases of Baranello v Suffolk County Legislature (126 AD2d 296, appeal dismissed 69 NY2d 1037) and Nydick v Suffolk County Legislature (81 Misc 2d 786 [Stark, J.], affd 47 AD2d 241, affd 36 NY2d 951). Plaintiffs also contend that the filling of a vacancy in the Office of Suffolk County Clerk is not a matter of "Statewide concern”.
IV
Briefly reiterated, NY Constitution, article XIII, § 13 (a) and *676 County Law § 400 (1) state that, "the clerk of each county shall be chosen by the electors”. The Constitution further provides that "[t]he legislature shall provide for filling vacancies in office” (NY Const, art XIII, § 3).
Pursuant to this constitutional mandate, the Legislature enacted County Law § 400 (7) which provides that "a vacancy in an elective county office, shall be filled by the governor by appointment” (see also, Public Officers Law § 43).
Also contained in the County Law is the previously mentioned section 2 (b) which states that the chapter shall apply to all counties except when the provisions of the County Law are in conflict with or in limitation of a provision of any alternative form of county government. Then the County Law shall not be applicable to any county unless a contrary intent is expressly stated in this chapter.
County Law § 2 (b) mentions an alternative form of county government pursuant to NY Constitution, article IX, §2. Article IX, § 2 (a) provides that, "[t]he legislature shall provide for the creation and organization of local governments in such manner as shall secure to them the rights, powers, privileges and immunities granted to them by this constitution.” Section 2 (b) provides
"[s]ubject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature:
"(1) shall enact, and may from time to time amend, a statute of local governments granting to local governments powers including but not limited to those of local legislation and administration in addition to the powers vested in them by this article”.
Finally, section 2 (c) (ii) provides in part that
"every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects * * *
"(1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees” (see, Matter of Kelley v McGee, 57 NY2d 522 [for an analysis of the comprehensive home rule provisions]).
Pursuant to these home rule provisions contained in the New York State Constitution, the Legislature adopted the Municipal Home Rule Law and section 33 (1) states, "[s]ubject *677 to restrictions in the constitution, in the article or in any other applicable law the board of supervisors of any county * * * shall have power to prepare, adopt, amend or repeal a county charter” and section 33 (2) states, inter alla, that a county charter shall set forth the structure of the county government and it may provide for the appointment of any county officers or their selection by any method of nomination and election provided that there shall be an elective "board of supervisors”.
The thread running through the Constitution and the Municipal Home Rule Law "demonstrates the evolution of county governments from their previous status as administrative arms of the State to their present status as more autonomous units of local government. The power granted to counties over the nature and functions of its local offices is a significant one, extending even to the power to abolish those offices under certain circumstances (Westchester County Civ. Serv. Employees Assn. v Del Bello, 47 NY2d 886, revg on dissenting opn below 70 AD2d 604)” (Matter of Kelley v McGee, 47 NY2d 522, 536, supra; see also, Matter of Resnick v County of Ulster, 44 NY2d 279, 288; 1980 Atty Gen [Inf Opns] 156, 158 ["(w)e conclude that a county by local law may empower its legislative body temporarily to fill a vacancy in an elective county office other than county judge, surrogate, or family court judge until the vacancy can be filled at an election”]).
Thereafter, Suffolk County, utilizing the provisions of the Constitution and the Municipal Home Rule Law, began, on March 21, 1958, operating under a charter form of government (L 1958, ch 278 [which states, "an act to provide an alternative form of government for Suffolk County to be known as 'The Suffolk county charter’ ”, and was signed by the Governor]). The County Clerk’s provisions were contained in sections 1701-1702.
However, there are some restrictions on the counties. Section 34 states in part that the Legislature hereby imposes the following limitations on the powers of counties to prepare, adopt and amend county charters and charter laws except that a county charter or charter law shall not supersede any general or special law enacted by the Legislature (Municipal Home Rule Law § 34 [1], [3]).
Section 34 (3) (g) contains the limitations and specifically mentions the laws involved as follows: "[i]n this chapter or in the civil service law, eminent domain procedure law, environ *678 mental conservation law, election law, executive law, judiciary law, labor law, local finance law, multiple dwelling law, multiple residence law, public authorities law, public housing law, public service law, railroad law, retirement and social security law, state finance law, volunteer firefighters’ benefit law, volunteer ambulance workers’ benefit law, or workers’ compensation law.”
Therefore, a county charter or charter law may not supersede 19 specific laws. The section does not mention the County Law or the Public Officers Law for good reason. Again, the County Law specifically provides in section 2 (b) that ”[t]he provisions of this chapter in so far as they are in conflict with or in limitation of a provision of any alternative form of county government * * * shall not be applicable to the county, unless a contrary intent is expressly stated in this chapter.” Additionally, County Law § 1001 (3) clearly states, "[njothing herein shall be deemed to affect, impair or supersede the provisions of any alternative form of county government, administrative code, county government law, civil divisions act or optional form of county government law, or any local law heretofore or hereafter adopted pursuant to any such optional or alternative form of county government, unless a contrary intent is expressly provided in this chapter.”
Therefore, County Law § 400 and article 8 do not expressly state that the section or the article is to be superior or supersede any alternate county government law.
In fact, this position was reaffirmed by the court in Baranello v Suffolk County Legislature (126 AD2d 296, 301-302, supra) as follows: "[t]he plaintiff-petitioners also allude to the provisions of County Law § 400 (7), pursuant to which, with certain exceptions, 'a vacancy in an elective county office, shall be filled by the governor by appointment’. Any argument that Mr. LoGrande was not properly appointed based on this provision must fail for several reasons. The most obvious flaw in this argument is that the provisions of the County Law have no application at all to the extent that they conflict with the provisions of the Suffolk County Charter (see, County Law § 2 [b])” (see also, Nydick v Suffolk County Legislature, 81 Misc 2d 786, affd 47 AD2d 241, affd 36 NY2d 951, supra).
The court then discussed noncharter counties and that vacancies in local office may be filled by appointment in accordance with local laws (and not the Governor) except if the local officer’s authority touches upon a matter of concern *679 to the State. The court held that the provisions of County Law § 400 (7) have no application at all in Suffolk County because they conflict with the provisions of Suffolk County Charter § C18-3. Additionally, the "matter of concern to the State” analysis has no application to resolving conflicts between "vacancy in office statutes” in charter counties. This analysis would only apply to conflicts in noncharter counties.
Another case affirms this reasoning. In Long Is. Liquid Waste Assn, v Cass (107 AD2d 666), an action was brought to declare illegal and invalid the actions of the county Commissioner of Public Works who adopted a schedule of rates for disposal of scavenger wastes for sewer districts. The court agreed because County Law § 266 (1) mandates that such rates are subject to confirmation by the "board of supervisors” and Suffolk County did not have the rates confirmed by the "board of supervisors” even though a Suffolk County local law permitted only the commissioner to establish the rates.
The court recalled and vacated its prior decision (Long Is. Liquid Waste Assn. v Cass, 115 AD2d 710) and used language that is pertinent to this case. "While the * * * statutory authority [County Law § 266 (1)] lends credence to plaintiff’s argument, County Law §2 (b) warrants a different result” (supra, at 711). The court continued, " [t]his provision effectuates the design of the County Law which, unlike most general laws, is intended to provide rules of local government in instances where a county has not done so by adopting an alternative form of government * * *. Thus, where a county has adopted its own form of government, the provisions of that county’s duly adopted local laws apply instead of those of the County Law. This is so even if the County Law provisions are inconsistent with those of the local law, unless the County Law expressly indicates that its provisions should apply notwithstanding County Law § 2 (b). In the case at bar, County Law § 266 contains no such express indication’ ” (supra, at 711-712).
So too, in this case, County Law § 400 contains "no such express indication” that its provisions should apply notwithstanding County Law §2 (b). Furthermore, the County Law when originally passed in 1950 (L 1950, ch 691, eff Apr. 15, 1950) contains a "note of commission” which states, in part, "It is the intention of the commission to make the provisions of the new County Law applicable to these instances of different alternative and charter forms of structural county government only when by express language same is made *680 applicable” (L 1950, ch 691, n 2; emphasis added). Clearly then, the Commission’s intention was to have the County Law apply to alternative and charter counties only when the sections of the County Law contained express language that the section is made applicable to such counties. In other words, if the sections of the County Law did not contain the "express language”, the different alternative and county charter counties were free to adopt their own local laws concerning the operation of their governments.
V
Defendants rely on the cases of Carey v Oswego County Legislature (91 AD2d 62, affd 59 NY2d 847, supra) and Cuomo v Chemung County Legislature (122 Misc 2d 42, supra).
In Carey the Governor brought a declaratory judgment action "to compel a declaration that he has the exclusive right to appoint an interim District Attorney to the vacancy existing in that office” (supra, at 62-63). The defendant Legislature claimed that "a grant of such authority would violate the home rule provisions of article IX of the State Constitution by rendering ineffective a duly enacted local law vesting the power of appointment in the county legislature” (supra, at 63). The Carey court cited Matter of Kelley v McGee (57 NY2d 522, 539, supra) where the Court of Appeals held that District Attorneys must be considered local officers and "[i]t is obvious that the office of District Attorney, having as its responsibility the enforcement, on a local level, of the penal laws of this State and the representation of the people of this State in criminal matters arising within the county, is a matter of concern to the State”. Therefore, the Carey court concluded that "the question of whether the State’s enaetmént [County Law § 400] is a general law or local law is irrelevant where, as here, the concern prompting the legislation is of overriding State-wide interest. We find no incongruity in concluding that subdivision 7 of section 400 of the County Law supersedes inconsistent local laws providing for the filling of vacancies in the office of District Attorney” (supra, at 65).
Unlike Suffolk County, Oswego County is a noncharter county. Our own Appellate Division has summarized the Carey case (supra) as follows: "that County Law § 400 (7) supersedes inconsistent local laws in a noncharter county relating to [the] filling of vacancy in office of District Attorney” (Baranello v Suffolk County Legislature, 126 AD2d 296, 302, supra; emphasis added).
*681 In Cuomo (supra, at 44), the court determined that vacancies in the Office of Sheriff are to be filled by the Governor by appointment pursuant to County Law § 400 (7) because there was a "sufficient State concern” with the office that a local law could not supersede the County Law.
The two cases are distinguishable from the facts in this case. The courts allowed the County Law and a "State-wide concern” to override a local law to the contrary. A District Attorney has the responsibility and discretion to locally enforce the State penal law and he brings an action in the name of "The People of the State of New York”. The Sheriff also enforces the State penal law, the State civil law and "the operation of local correctional facilities”. (Supra, at 44.)
However, the responsibilities of the County Clerk do not involve the exercise of any discretion. His office is concerned with administrative functions. The County Clerk is merely a depository of legal documents and papers that affect the county and the county residents. For instance, mortgages, deeds, and personal security agreements affecting real or personal property located within the county or judgments effecting residents of the county are filed in the County Clerk’s office. The clerk has no direct responsibility to the State unlike the District Attorney who is responsible to the Attorney-General and the County Treasurer who is responsible to the State Comptroller. Even the fees that the County Clerk can charge are regulated by statute (CPLR 8021).
CONCLUSION
Based upon the foregoing reasons, the court declares that Suffolk County Charter § C18-3 concerning the filling of a vacancy in the Office of the County Clerk applies and not County Law § 400. The court declares the defendant Cuomo’s appointment of codefendant Holst on May 23, 1989 was illegal and null and void. Since the appointment was made in good faith and defendant Holst, as "County Clerk”, processed and filed the legal documents and papers presented to the County Clerk’s office, this court, in the orderly administration of justice, ratifies and confirms all of defendant Holst’s acts as "County Clerk” concerning those documents and papers. Additionally, the salary paid to defendant Holst from May 23, 1989 until the entry of the judgment in this case for the performance of his duties as "County Clerk” is ratified.
Further, since the court has determined that Suffolk County *682 Charter § C18-3 applies to this situation, the election to be held on November 7, 1989 is for the "unexpired term” of Juliette Kinsella, to wit: until December 31, 1990 (Suffolk County Charter § C18-3 [A] [Note County Law § 400 (7) only states that when a vacancy occurs in the Office of County Judge, Surrogate, or Judge of the Family Court it "shall be filled for a full term” (emphasis added) the section is silent as to the length of the term for other "elective county office”— Suffolk County Charter § C18-3 (A) fills the void]). The court strongly recommends that the County Executive with the approval of the County Legislature immediately appoint the certified successful candidate as determined by the Suffolk County Board of Elections for the election for County Clerk on November 7, 1989, to the Office of County Clerk. A permanent injunction is granted barring the termination of the employment of the three named individuals. Defendants’ motion for summary judgment dismissing the complaint is denied and plaintiffs’ cross motion for summary judgment is granted. The court would be remiss if it did not commend the attorneys for each side in submitting excellent memoranda of law.